## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Irene A. Rogers,

    Plaintiff,

v.

Bank of America, N.A.as
successor by Merger to
Countrywide Home Loans,
Inc,  and Country Home
Loans Servicing, LP; Bank of
New York Mellon formerly
known as  to Bank of New
York as Trustee for the
Certificateholders CWABS,
Inc., Asset-backed
Certificates, Series 2005-4;
Bank of New York Mellon
Trust Company N.A.
formerly known as
Bank of New York Trust
Company N.A. as Co-
Trustee for
Certificateholders CWABS,
Inc., Asset-based
Certificates, 2005-4;
Mortgage Electronic
Registration Systems, Inc., a
Delaware corporation,
, John and Jane Does 1-10,

    Defendants.

**COMPLAINT FOR BREACH OF
CONTRACT, DAMAGES, &
JURY TRIAL**

Court File No.

TO THE HONORABLE UNITED STATES DISTRICT COURT

JUDGE

# I. Preliminary Statement

Plaintiff Irene A. Rogers brings this action against Bank of America, N.A.; Bank of New York as Trustee for the Certificate holders CWABS, Inc., Asset-backed Certificates, Series 2005-4; Bank of New York Trust Company N.A. as Co-Trustee for Certificate holders CWABS, Inc., Asset-based Certificates, 2005-4; Mortgage Electronic Registration Systems, Inc., and, John and Jane Does 1-10 to:

a)   Obtain a declaration that the 2008 and 2011assignments of mortgage from MERS to Bank of New York Mellon and Bank of New York Mellon Trust as Co-Trustees are void, illegal and of no legal effect because said assignments were executed years after the closing date for the above described mortgage trust on August1, 2005 and consequently the foreclosure by advertisement and Sheriff's sale conducted on May 17th, 2013 are also void and of no legal effect.

b)   Obtain a declaration that the foreclosure by advertisement and Sheriff's sale  conducted on

May 17th, 2013 is void and of no legal effect due
to BANA's failure to comply with the statutory
requirements of Minn. Stat. §§ 580.02 and
580.04.

c)   Assert breach of contract claims against Bank of
America as the current servicing agent for this
mortgage obligation and its currently unknown
principal for offering to modify the mortgage loan,
but refusing to do so after full performance by
Plaintiff in 2010.

d)   Assert defamation of title claims against Bank of
America, MERS, Bank of New York Mellon as
Trustee, and Bank of New York Mellon Trust as
Co-Trustee for recording purported assignments
of mortgage in 2008 and 2011, and commencing a
foreclosure by advertisement in 2012 when the
funding period for the mortgage trust closed in
August 2005.

e)      Assert state law statutory claims under Minn. Stat. §§58.13 *et seq* and 8.31against Bank of America.

1. All claims amount to a serious breach of Defendants' contractual obligations, and have resulted in illegal and wrongful non-judicial foreclosure, and money damages.

2. Plaintiffs also seek declaratory and injunctive relief to further restrain Defendants under Minn. Stat. §58.13 and others.  All such Minnesota state law claims are properly asserted under this Court's diversity jurisdiction.

3. The Defendants are proper parties to be sued for claims arising out of the transaction when Defendants are attempting to enforce *contractual obligations* in a non-judicial foreclosure.

## II. Parties

4. Plaintiff Irene A. Rogers ("Plaintiff") is a borrower as that term is defined under Minn. Stat. §58.02 Subd. 4.  Plaintiff has rights as a citizens domiciled here in Minnesota, the owners of the *residential dwelling* located at 13443 Red Fox Road Rogers, MN 55374 (hereinafter the "Property").

5. Bank of America N.A. ("BANA") is a wholly owned subsidiary of Bank of American Corporation. BANA is the successor by merger to both Countrywide Home Loans, Inc, ("CHL") a New York Corporation, which originated the mortgage obligation in dispute and Country Home Loan Servicing LP, Texas Limited Partnership, ("CHLS") which is the Master Servicing agent of the securitized mortgage trust at issue here. Both CHL and CHLS are wholly owned subsidiaries of Countrywide Financial Corporation which is in turn also wholly owned by Bank of American Corporation. BANA may be served with process by serving the Officer in Charge at its headquarters located at 100 North Tryon Street Charlotte, NC 28202 Mecklenburg County.

6. BANK of NEW YORK MELLON as TRUSTEE for CWABS 2005-04 ("Bank of New York Mellon as Trustee") is the Trustee of a securitized mortgage trust and may be served with service of process by serving the Officer in Charge at its office located at 1 Wall Street New York, NY 10286.

7. BANK of NEW YORK MELLON TRUST COMPANY as CO-TRUSTEE for CWABS 2005-04 ("Bank of New York Mellon Trust as Co-Trustee ") is the Trustee of a securitized mortgage trust and may be served with service of process by serving the Officer in Charge at its office located at 400 South Hope Street Los Angeles California, 90071 Los Angles County.

8. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a Delaware Corp. and a subsidiary of MERSCORP, Inc. MERS is an electronic registry and clearinghouse established to track ownership or changes thereof, servicing rights in mortgages, corporate names and mergers. Due to the inherent cost of public registry associated with numerous and multiple transfers of loan pools and their changes of ownership interest in the secondary mortgage market, MERS eliminates this expense contrary to public policy and state regulatory conveyance devices established in conventional lending practices. This entity is an assignee by virtue of its disclosed status as a "Nominee for Lender, its Successors or Assigns," and is needed for just adjudication. MERS may be served with service of process by serving the Officer in Charge at its principal office c/o MERSCORP, Inc., Bill Beckmann, President, CEO 1818 Library Street Suite 300 Vienna VA 20190.

9. Defendants John and Jane Does 1-10 are involved in the instant case and transaction and are currently unknown to Plaintiffs.  Said entities will be joined upon further discovery of their true nature and liability once these facts are known and supported by competent evidence.

### III. Jurisdiction/Venue

10. This Court has Jurisdiction in this proceeding pursuant to 28 U.S.C. § 1332(a) (1).  The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.  Counts arising under contract, common law, and the law of conveyances in real property are properly asserted under this Court's diversity jurisdiction.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 generally whereby the real property and a substantial part of the events and claims, the subject of this suit, are situated here and Defendants' business practices are within the forum state of Minnesota.

### IV. Statement of Facts Material to the Transaction

12. On or about December 8th, 2003 Plaintiff Irene A. Rogers and her husband Jon J. Rogers acquired title

to the Property by warranty deed which was

subsequently recorded in the office of the Hennepin

County Recorder as document no. A8245171. A copy

of the deed is incorporated herein and attached hereto

as Exhibit A.

13.   Plaintiff is  the owners of the property commonly referred

to as  an d legally described as:

   Lot 18 Block 5 Fox Creek 4th Addition

(hereinafter "the Property").

14.   On or about April 13th, 2005, Daniel Cano, a mortgage

broker employed by Countrywide Home Loans, completed a

Uniform Residential Loan Application (the "1003")

By phone on behalf of John Rogers.  Although Irene Rogers

is noted on the Application as Mr. Roger's spouse, Mr. Cano

did not put her on the loan as a Co-borrower.

15.   Eleven days later on or about April 25th, 2005, Plaintiff's

husband John J Rogers refinanced the existing mortgage

loan in favor of Countrywide Home Loans, Inc ("CHL") on

their Home with a new loan the amount of $196,800 also

payable to Countrywide Home Loans, Inc. Although Plaintiff

was required to sign the mortgage, she did not apply for the
mortgage loan or sign the promissory note for the mortgage
obligation. The mortgage lien was recorded as document
8587572 in the Hennepin County Recorder's Office and is
incorporated herein and attached hereto as Exhibit B.

16.   On or about June 1, 2005, a Pooling and Service
Agreement ("PSA") was agreed between arious entities acting
as Depositor, Sellers, Master Servicer and Co-Trustees was
created for a securitized mortgage trust known as Bank of
New York as Trustee for the Certificateholders CWABS, Inc.,
Asset-backed Certificates, Series 2005-4. ("The Mortgage
Trust") naming Bank of New York N.A. and Bank of New
York Trust Company as Co-Trustees.  ("the  Co-Trustees") A
copy of the Mortgage Trust's PSA filed with the SEC is
incorporated herein and attached hereto as Exhibit C.

17.   The PSA of the Mortgage Trust required that all
mortgages to be included in the corpus of the Mortgage
Trust were to be transferred into the Mortgage Trust
between June 1, 2005 and August 8, 2005. ("the Funding
Period").

18.   On or about November 2007, John Rogers consulted a
      physician after finding a lump in his left jaw.

19.   Despite two courses of antibiotics, Mr. Roger's condition
      worsened leading to an initial exploratory surgery on March
      6, 2008 and two subsequent surgeries on March 16th, 2008.

20.   The March 2008 surgeries revealed Mr. Roger had late
      stage parotid adenocarcinoma which had metastized into
      his lymphatic system.

21.   During April and May 2008, Mr. Rogers completed a fie
      week course of twice daily radiation and weekly
      chemotherapy.

22.   From late February 2008 onward, Mr. Rogers was unable
      to work and Irene Rogers handled the household finances.

23.   In June 2008, Mr. Rogers went on disability.

24.   On or about June 12th, 2008, the Rogers sent a letter to
      Countrywide Home Mortgage, a present subsidiary of BANA,
      Describing their circumstances and asking for a mortgage
      modification. A copy of this letter is incorporated therein
      and attached hereto as Exhibit D.

25.   On or about June 27th, 2008, a purported assignment of mortgage ("the First Assignment") from MERS to the Mortgage Trust was recorded in the office Hennepin County Recorder office as document no. A9152524.   Foreclosure attorney Steven H. Bruns of Peterson, Fram and Bergman executed a purported assignment to the Mortgage Trust as a vice President of MERS. A copy of the First Assignment is incorporated herein and attached hereto as Exhibit E.

26.   On the same day. the Mortgage Trust recorded a Power of Attorney to Foreclose and Pendency of Proceeding in the office of the Hennepin County Recorder as document no. A9152525.

27.   Throughout 2008, the Rogers continued to make monthly payments some of which were late and one of which was partial.

28.   No foreclosure sale occurred in 2008.

29.   In 2009, the Rogers made eleven payments through the end of September 2009.

30.   On September 26th, 2009, John J. Rogers died.

31.   In November 2009, BANA offered a trial loan modification under the HAMP program contingent on Plaintiff making three timely trial payments of $873.17 in January, February, and March 2010.

32.   On December 2, 2009, Irene A. Rogers was appointed the personal representative and administrator of John Roger's unsupervised estate. A copy of the Letters Testamentary is incarnated herein and attached hereto as Exhibit F.

33.   In early 2010, Irene timely made the payments under the HAMP program, and was sent the documents for a permanent loan modification.

34.    When Irene Rogers discovered the permanent loan modification documents required a signature by her deceased spouse, she informed BANA of his death and provided it with documentation that she was the personal representative of his estate.

35.   BANA changed the name on the mortgage account to "Estate of John Rogers" and refused to honor the HAMP loam modification because Ms. Rogers was not a party due to the original mortgage note.

36.   Following BANA's denial of her HAMP loan medication,
      Irene Rogers continued to make partial and late payments

37.   No Sheriff's sale took place in 2010.

38.   In 2011, Irene Roger continued to make partial and late
      payments.

39.   In the summer of 2011, Plaintiff applied for the U.S.
      Department of Housing and Urban Development's (HUD's)
      now defunct Emergency Homeowner's Loan Program
      ("ELPH") which provided up to fifty thousand dollars
      ($50,000) in assistance to certain homeowners.

40.   On or about August 5, 2011, Plaintiff was notified by the
      Community Action Partnership of Suburban Hennepin
      ("CAPSH") that her application for EHLP had been selected
      by lottery, and CAPSH would be assisting her through the
      final application process.

41.   Plaintiff submitted the required documentation to the
      ELPH program.

42.   On or about September 1, 2011, Plaintiff Rogers was
      informed her ELPH had been denied because although she

was now the sole owner of the Property and had signed the mortgage lien she was not on the mortgage note.

43.   During October and November 2011, Plaintiff Rogers submitted another request for loan modification with the assistance of CAPSH staff, but was denied because she was not party to the mortgage note.

44.   On or about October 28th, 2011, a purported assignment of mortgage ("the Second Assignment") from MERS to the Mortgage Trust was recorded in the office Hennepin County Recorder office as document no. A9709956. An individual named Bud Kamyabi executed a purported assignment to the Mortgage Trust as an Assistant Secretary of MERS some seventy- four (74) months after the Funding Period for the Mortgage Trust was closed. The interest purported assigned by the Second Assignment is the same as that of the First Assignment. A copy of the Second Assignment is incorporated herein and attached hereto as Exhibit G.

45.   No foreclosure sale occurred in 2011.

46.   On January 11th, 2012, the Co-Trustees recorded a

Power of Attorney to foreclose and Pendency of Proceeding

executed by Assistant vice President of BANA Shamin Ali as

Attorney in Fact for the Mortgage Trust  in the office of the

Hennepin County Recorder as document no. A9152525. A

copy of this document is incorporated herein and attached

hereto as Exhibit H.

37.   In 2012, Plaintiff Irene Rogers made another attempt at

HAMP modification which was ultimately denied because she

was not party to the mortgage note.

38. No foreclosure sale occurred in 2012.

39. On May 17th, 2013, after multiple postponements, the Co-

Trustees conducted a Sheriff's sale. A copy of the Sheriff's

Certificate of Sale and Foreclosure Record is incorporated

herein and attached hereto as Exhibit I.

**COUNT ONE**
**DECLARATORY JUDGMENT**
**(Defective Assignments)**

41.    This    Court    has    subject    matter jurisdiction pursuant to pursuant to 28 U.S.C. § 1332(a)(1).

42.    This Court is vested by virtue of  28 U.S.C. § 2201 and the Uniform Declaratory Judgments Act with the power to declare the rights and liabilities of the parties hereto and to give such further and other relief as may be necessary.

43.    Venue is proper under 28 U.S.C. §§ 1391.

44.    Per page 217 (internal pagination p.178) Plaintiff's Exhibit C, Section10.03 of the PSA governing the Mortgage Trust states it is governed by the law of New York.

45.    The PSA states that the Mortgage Trust consists of four Real Estate Mortgage Investment Conduits. ("REMICs"). *See* Exhibit C at page 11-12 (internal pagination 1-2).

46.    Pursuant to 26 U.S.C. § 860D (a)(4) of the Internal Revenue Code,("the Code) any REMIC must be funded within ninety dates of the Mortgage

Trust's starting date of June 1st, 2005.

47.     The PSA of the Mortgage Trust specifies the Cutoff Date for inclusion of mortgages into the Mortgage Trust to the later of June 1, 2005 and the first of the month of any Subsequent Transfer Date. *See* Exhibit C at page 40. (page 28 internal pagination).

**I**n turn, section 2.01(d) of the PSA mandates that Subsequent Transfer Agreement may only be executed on any business day during the Funding Period defined in the PSA as between June 1, 2005 and August 1, 2005. *See* Exhibit C at page 80. (page 62 internal pagination).

48.     Per Plaintiff's Exhibit E, the assignment of the mortgage to the Co-Trustees and the Mortgage Trust by foreclosure counsel Steve Bruns under the auspices of MERS was executed on June 10, 2008 roughly thirty four (34) months after the Mortgage Trust was closed to new mortgage loans.

49.     Per Plaintiff's Exhibit G , an  assignment of the
mortgage to the Co-Trustees and the Mortgage Trust
by "Assignment under the auspices of MERS was
executed on October 17, 2011 roughly seen-four
(34) months after the Mortgage Trust  was closed to
new mortgage loans.

51.     As the terms of the PSA of the Mortgage Trust
specifies that any assignment of the mortgage would
be need to be executed no later than August 1,
2005, the purported subsequent assignments to the
Mortgage Trust executed on June 10, 2008 and
October 17th, 2011 are *ultra vires* acts outside the
scope of the Mortgage Trust's PSA and the legal
authority of the Co-Trustees, and consequently of
no legal force or effect.

52.      Plaintiff is entitled to a finding and declaration
that:

a. The PSA creating and controlling the Mortgage
Trust   requires   that   any   assignment   of

mortgage loan be executed no later than August 1, 2005.

b. The First and Second Assignments are void and of no legal force or effect because the Assignments are respectively dated June 10, 2008 and October 11th, 2011 which is later than the Cutoff Date for the Mortgage Trust.

c. The First and Second Assignments violate the terms of the PSA of the Mortgage Trust and consequently are outside the scope of the Co-Trustees' legal authority.

d. The First and Second Assignments violate the provisions of 26 U.S.C. 860D (a) (4) regulating the four REMICs compromising the Mortgage Trust.

e. As the First and Second Assignments are of no legal force or effect, the foreclosure action commenced on January 11, 2012 by BANA as Attorney in Fact for the Co-Trustees is also void and of no legal force or effect.

## COUNT TWO
## DECLARATORY JUDGMENT
### (Defective Foreclosure)

53.     The Plaintiffs reallege all paragraphs of this Complaint as set forth fully herein.

54.     This Court has subject matter jurisdiction pursuant to pursuant to 28 U.S.C. § 1332(a) (1) and Minn. Stat. § 555.01 *et seq.*

55.     This Court is vested by virtue of  28 U.S.C. § 2201 and the Uniform Declaratory Judgments Act with the power to declare the rights and liabilities of the parties hereto and to give such further and other relief as may be necessary.

56.     Venue is proper under 28 U.S.C. §§ 1391 and Chapter 542 of the Minnesota Statutes including Minn. Stat § 542.02 as Plaintiff's Property is located in Hennepin County.

57.     Minn. Stat. 580.04 requires "any assignees" to be included in the Notice of Foreclosure.

58.     Per page 16 of Plaintiff's Exhibit I, the Notice of Mortgage Foreclosure Sale omits the Second Assignment.

50.  Alternatively, Minn. Stat. §580.02 provides in pertinent part:

To entitle any party to make such foreclosure, it is requisite:

> *(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered;*
> Emphasis added.

46.  At the time of the commencement of the foreclosure proceeding on January 11th, 2012; no *valid and legal* assignment of Plaintiffs' mortgage obligation was recorded on the title records to the subject Property. *See* Count One *supra.*

47.  Alternatively, Minn. Stat. 580.11 permits mortgagees, assignees, and their legal representatives to bid in good faith at Sheriff's sales.

48. Unlike other bidders at a Sheriff's Sale who must tender cash or certified funds, mortgagees and assignees are permitted to "credit bid" at Sheriff's sales based on their ownership of the mortgage debt being foreclosed.

49. Per the Sheriff's Certificate of Sale, Bank of New York Mellon as Trustee, purported offered two hundred thirty-five thousand, seen hundred eighteen dollars and twenty-one cents. ($235, 718.21) as the successful bidder on May 17th, 2013.

51. As neither the First or Second Assignment to the Mortgage Trust were valid, Bank of New York as Trustee was not an assignee of the mortgage being foreclosed was consequently not entitled to "credit bid".

50. Upon information and belief, Bank of New York As Trustee "credit bid" on a mortgage it did not own rather than tender $235, 718.21 on May 17th, 2013.

51.  Consequently,   the   purported   Sheriff's   Sale
conducted  on  May  17th, 2013  was  void  because  no
consideration was given for the Sheriff's Certificate.

52. Plaintiff  is  entitled  to  a  finding  and  declaration
that:

a. Bank  of  New  York  Mellon  as  Trustee  failed  to
include   the   second   assignment   in   their   Notice   of
Mortgage Foreclosure Sale.

b. The  Co-Trustees  of  the  Mortgage  Trust  failed  to
record  any  valid  and  legal  assignment  prior  to  of
Plaintiff's  mortgage  prior  to  commencing  the  foreclosure
on January 11th, 2012.

c. No  actual  consideration  was  received  from  Bank
of  New  York  Mellon  as  Trustee  in  exchange  for  the
Sheriff's certificate

b. Due  to  the  Co-Trustee's  compound  failures  to
comply  with  the  Minnesota  statutes  as  set  forth  herein,
the  putative  foreclosure  by  advertisement  is  void  and  of
no  legal  effect  because  Defendants  were  not  entitled  to

the foreclosure by advertisement remedy at the time the foreclosure in dispute was commenced.

## COUNT THREE
## DECLARATORY JUDGMENT
### (Breach of Contract)

59.    The Plaintiff realleges all paragraphs of this Complaint as set forth fully herein.

60.    This Court has subject matter jurisdiction pursuant to pursuant to 28 U.S.C. § 1332(a) (1) and Minn. Stat. § 555.01 *et seq.*

61.    This Court is vested by virtue of  28 U.S.C. § 2201 and the Uniform Declaratory Judgments Act with the power to declare the rights and liabilities of the parties hereto and to give such further and other relief as may be necessary.

62.    Venue is proper under 28 U.S.C. §§ 1391 and Chapter 542 of the Minnesota Statutes including Minn. Stat § 542.02 as Plaintiff's Property is located in Hennepin County.

63.     Per paragraph 16 and herein *supra*,  Plaintiff Roger's now deceased spouse, John J. Rogers,

executed a mortgage Note in favor of Countrywide

Home Loans, Inc ("CHL")on April 22, 2005.

64.     In July 2008, BANA's parent corporation,

Bank of America Corporation acquired CHL's parent

corporation, Countywide Financial.

65.     Upon John Roger death on September 26th,

2009, his joint interest in the Property was

conveyed to Plaintiff Roger by operation of

Minnesota, and his mortgage debt became part of

his estate.

66.     Per Exhibit F *supra*, Plaintiff was appointed

Personal Representative of John Roger's estate with

full authority to deal with debts including his

mortgage obligation.

67.     Per paragraph supra, BANA offered Plaintiff a

HAMP loan modification provided she make three

timely trial payments of $873.17 in January,

February, and March 2010.

68.     Plaintiff's Rogers made the requisite payments, and received documents for a final HAMP loan modification.

69.     BANA breached the Loan Modification Agreement and Note by accepting Plaintiff's payments, but failing to execute the final Loan Modification Agreement when she has the same contract rights as decedent John Rogers as his personal representative and heir.

70.     As a direct result of BANA's breach of the Note and Loan Modification Agreement, Plaintiffs have suffered monetary and nonmonetary damages including but limited to the value of her title interest in the Property mostly recently valued at one hundred forty thousand dollars ($140,000).

71.     Plaintiff is entitled to a finding and declaration that:

a. Defendant BANA breached the Loan Modification Agreement and Note by accepting payments thereto, but refusing to sign the Loan Modification

Agreement required to being in writing pursuant to
Minn. Stat. §513.01.

b. As a result of Defendants' breach, Plaintiffs
suffered money damages including but not limited to the
value of the purported loss of her title interest in the
Property in the amount of not less than one hundred
forty thousand dollars ($140,000).

### COUNT FOUR
### (Defamation of Title)

72.     The Plaintiff realleges all paragraphs of this
Complaint as set forth fully herein.

73.     Per Exhibit E *supra* on June 27, 2008,  MERS
recorded on title to the Plaintiff's Property a false
statement (:Statement 1") purporting to assign a
mortgage on the title to the Co-Trustees of the
Mortgage Trust when the Mortgage Trust was closed
on August 1, 2005.

74.     Per Exhibit H *supra*, on January 11, 2012,
BANA and MERS on behalf of the Mortgage Trust
recorded on title to Plaintiff's Property a false

statement ("Statement 2") purporting to be a
Pendency of Proceeding and Power of Attorney to
Foreclose which was illegal, and invalid because no
assignment to the Mortgage Trust was executed
prior to the Mortgage Trust closing on August 1,
2005.

75.     Per Exhibit I *supra* on May 20th, 2013, the Co-
Trustees to the Mortgage Trust and BANA recorded
a false statement ("Statement 3") (collectively "the
Statements" purporting to be a Sheriff's Certificate
which, inter alia, purported to convey title to the
Plaintiff's Property to the Mortgage Trust following a
statutory redemption period which was illegal, and
invalid because no assignment to the Mortgage
Trust was executed prior to the Mortgage Trust
closing on August 1, 2005.

76.     The Statements were published by recording in
the title records of Hennepin County and in the
Finance & Commerce newspaper pursuant to the
defective and illegal foreclosure by advertisement

28

commenced by the Co-Trustees of the Mortgage Trust and their agents BANA and MERS.

77.     The Statements were published maliciously, without legal authority to do so, by the Co-Trustees of the Mortgage Trust, BANA and MERS because no assignment to the Mortgage Trust was executed prior to the Mortgage Trust closing on August 1, 2005.

78.     As a direct result of the publication of these Statements by the Defendants, Plaintiff Irene Roger has suffered special damages including the alue of her record title interest to Property and attorney's fees necessary to obtain a declaration that she remains the fee owner of the Property.

**COUNT FIVE**

**(Violations of Minnesota Residential Mortgage Originator and Servicer Licensing Act) Minn. Stat. §§58.13 and 58.18**

79.     The Plaintiff realleges all paragraphs of this Complaint as set forth fully herein.

80.    Plaintiff is a borrower as that term is defined under Minn. Stat. §58.02 Subd. 4.

81.    Minn. Stat. §58.13 provides that certain standards apply to a person "acting as a residential mortgage originator or servicer including a person required to be licensed under" Chapter 58 of Minnesota Statutes.

82.    BANA is a "residential mortgage servicer" as defined under Minn. Stat. §58.20 subd. 20.

83.    Minn. Stat. §58.13, subd. 1(8) provides that it is unlawful for such a residential originator or servicer to:

> [V]iolate any provision of any applicable state or federal law regulating mortgage loans including, without limitation, sections 47.20 to 47.208.

84.    BANA violated Minn. Stat. §580.02 (3), setting forth the prerequisites for the foreclosure by advertisement remedy, by failing to record any legal assignment of the Note *prior* to commencing foreclosure by advertisement twice when the Co-

Trustees of the Mortgage Trust and BANA were was

not entitled to the foreclosure by advertisement

remedy.

85.    In addition, BANA violated Minn. Stat. §580.04

by failing to include the Second Assignment in its

Notice of Mortgage Foreclosure Sale.

86.    Minn. Stat. §58.18 Subd. 1 provides in pertinent
part:

A borrower injured by a violation of the standards,
duties, prohibitions, or requirements of sections
58.13, 58.136, 58.137, 58.16, and 58.161 shall have a
private right of action .

87.  As a result of each of the aforesaid violations,

BANA is liable to Plaintiff for:

A. Actual, incidental, and consequential damages

including Plaintiff's loss of a fee interest in her

Property most recently valued at $140,000.

B. Statutory damages equal to the amount of all lender

fees included in the amount of the principal of the

residential mortgage loan on April 22,2005;

C. Attorney's fees and costs; and

D. Such other relief as the Court deems appropriate.

## COUNT SIX

### Plaintiffs' Cause of Action under Minn. Stat. § 8.31

88.     The Plaintiff reallege all paragraphs of this Complaint as set forth fully herein.

89.     This action is in the public interest.

90.     "A borrower injured by a violation of the standards, duties, prohibitions or requirements of sections 58.13, 58.136, 58.137 and 58.16 may also bring an action under section 8.31. A private right of action by a borrower is in the public interest." 58.18 subd. 2.

WHEREFORE, the Plaintiff prays that the court:

a. Finds and declares that:

i. The assignments of mortgage from MER to the Co-Trustees recorded on title to Plaintiff Roger's Property violate the terms of the Pooling and Service Agreement for this particular mortgage trust, and are void

and of no legal force or effect

   ii. As a consequence, the foreclosure by advertisement conducted by the Co-Trustees is set aside as void and of no legal effect; and.

  iii. That Irene A. Rogers is the fee owner of the Property, subject to the mortgage in favor of the current owner of the mortgage obligation.

b. In the alternative. that this Court finds and declares:

   i. The foreclosure by advertisement conducted by the Co-Trustees is set aside as void and had no legal effect; and

  ii. That Irene A. Rogers is the fee owner of the Property, subject to the mortgage in favor of the current owner of the mortgage obligation.

c. In the alternative, that this Court finds and declares:

    i. Bank of American, N.A. breached the HAMP loan modification Agreement and mortgage note by refusing to execute its own agreement and acknowledge Plaintiff's contract rights as the personal representative to her husband's estate and commencing a non-judicial foreclosure which resulted in the loss of Plaintiff's record, if not actual, fee interest in the Property.

    ii. As a result of Defendants' breach, Plaintiffs are entitled to money damages including of not less than $140,000 representing the fair market value of Plaintiff's fee interest in the Property.

d. In the alternative. that this Court finds and declares

    i. that Defendants made no less three false statements concerning title to Irene Roger's Property as shown by Exhibit E,

  H, and I;

    ii. that Defendants' said statements were published in the Hennepin County Recorder's Office and a newspaper in circulation in Hennepin County;

  iii.  that Defendant maliciously published their statements without the requisite legal authority because Plaintiff's mortgage was not assigned to the securitized mortgage trust in question prior to August1, 2005.

  iv.  As a direct result of Defendants' published statements, Plaintiff suffered special damages in amount of no less than $140,000 representing the loss of her record, if not actual, fee interest in the Property and attorney's fee required to obtain a declaration of title.

c. Awarding actual, incidental and consequential damages against
  PHH under Minn. Stat. §58.18 Subd. 1(1) as

well as statutory damages for each violation of Chapter

58 of the Minnesota Statutes in an amount equal to all lender fees included in the principal of the residential mortgage loan under Minn. Stat. §58.18 Subd. 1(2),

d. Awarding Plaintiffs their costs, including the costs of investigation and attorney's fees, if any, as authorized by Minn. Stat. §58.18 and 8.31 subd. 3a.

e. If required, temporarily enjoin Defendants from evicting or otherwise dispossessing Plaintiffs from the Property unitl this matter is fully adjudicated pursuant to Minn. Stat. §58.18 and §8.31 Subd. 3a.

f. For such other relief as to the court is just.

Dated: June 27th, 2013

s/Michael J Keogh
Michael J Keogh
#0286515
 Keogh Law Office
 P.O. 11297
 St. Paul, MN 55111
 **_Attorney for Plaintiff_**