**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Irene A. Rogers,

    Plaintiff,

v.

Bank of America, N.A. as successor by Merger to Countrywide Home Loans, Inc, and Country Home Loans Servicing, LP; Bank of New York Mellon formerly known as to Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4; Bank of New York Mellon Trust Company N.A. formerly known as Bank of New York Trust Company N.A. as Co-Trustee for Certificateholders CWABS, Inc., Asset-based Certificates, 2005-4; Mortgage Electronic Registration Systems, Inc., a Delaware corporation,
, John and Jane Does 1-10,

    Defendants.

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

    Court File No.13-cv-1698 (SRN/TNL)

---

Plaintiff Irene Rogers ("Plaintiff") respectfully offer her memorandum in opposition to Defendants' motion for dismissal brought by Defendants Bank of America, N.A. ("BANA") ; Bank of

1

New York Mellon as Trustee for the Certificate holders CWABS, Inc., Asset-backed Certificates, Series 2005-4 ("BNYM"); Bank of New York Trust Company N.A. as Co-Trustee for Certificate holders CWABS, Inc., Asset-based Certificates, 2005-4 ("BYMTC") (collectively "the Co-Trustees"); Mortgage Electronic Registration Systems, Inc. ("MERS"), and, John and Jane Does 1-10
with respect with Plaintiff's claims for a declaration pursuant to New York trust law that the assignments of the mortgage are *ultra vires* acts by the Co-Trustees and thereby void, a declaration that the Co-Trustee's foreclosure sale is void because of their failure to record valid assignments prior to commencement of foreclosure proceeding and include all assignments on the notice of sale, a declaration that BANA breached the mortgage contract when it refused to modify the contract after Plaintiff made all required trial payments and executed a new mortgage note, and allege additional damages, special damages, and costs including attorney's fees for defamation of title and state statutory remedies for violations of various state laws regulating residential mortgages.

## I. <u>INTRODUCTION</u>

The present action arises out of multiple failures by Defendants to acknowledge Irene Roger's contract and real property rights, and the subsequent illegal foreclosure commenced in violation of the trust laws of New York and the real property and foreclosure laws of Minnesota.  Following a silent refusal to sign her Loan Modification despite Plaintiff's request and performance thereunder, Defendants foreclosed although certain documents or record indicated that two substantially similar assignments of mortgage to Co-Trustees three year apart were not valid or legally authorized. Plaintiff sued BANA, BNYM and BYMTC as Co-Trustees and MERS to obtain a declaration that assignments of mortgage were void pursuant to New York trust law, the foreclosure sale is void due to a failure to comply with the Minnesota foreclosure statute, and assert claims for breach of contract, defamation of title, and certain statutory remedies.   Under the deferential standard of review to which Plaintiff is entitled, she has adequately stated claims based on these Defendants' uniform failure to comply with myriad mortgage laws. Plaintiffs ask this Court to deny Defendants' motion for dismissal.

**II.     BACKGROUND AND OPERATIONAL FACTS.**

Plaintiff and her now deceased spouse, John Rogers purchased their property in December 2003. (Cmpl. ¶ 12) In April 2005, Plaintiff and her spouse refinanced their existing mortgage with Countrywide Home Loans with a new loan with the same lender. (Cmpl. ¶¶ 14-15) A Countrywide employee Daniel Cano who brokered the new loan omitted Plaintiff as a co-borrower to expedite the loan's approval through underwriting. (Cmpl. ¶ 14) As a result, Irene Rogers was a signatory to the mortgage lien, but not the mortgage note. (Cmpl. ¶ 15) On June 1, 2005, a Pooling and Service Agreement ("PSA") between various entities acting as Depositor, Sellers, Master Servicer and Co-Trustees was created for a New York securitized mortgage trust known as Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4 ('Mortgage Trust") naming Bank of New York N.A. and Bank of New York Trust Company as Co-Trustees. (Cmpl. ¶ 16). The PSA of the Mortgage Trust required that all mortgages to be included in the corpus of the Mortgage Trust were to be transferred into the Mortgage Trust between June 1, 2005 and August 8, 2005. (Cmpl. ¶ 17).

In early 2008, John Rogers was diagnosed with late stage cancer which required multiple surgeries, chemotherapy and radiation treatment, and precluded him from working. (Cmpl. ¶¶ 20-23) On or about June 27th, 2008, a purported first assignment of mortgage from MERS to the Mortgage Trust was recorded in the office Hennepin County Recorder office as document no. A9152524. (Cmpl. ¶ 25) On September 26th, 2009, John J. Rogers died. (Cmpl. ¶ 30) In November 2009, BANA offered a HAMP trial loan modification contingent on Plaintiff making three timely trial payments of $873.17 in January, February, and March 2010. (Cmpl. ¶ 31) On December 2, 2009, Irene A. Rogers was appointed the personal representative and administrator of John Roger's unsupervised estate. (Cmpl. ¶ 32) In early 2010, Irene Rogers timely made the payments under the HAMP program, and was sent the documents for a permanent loan modification. (Cmpl. ¶ 33). On discovering the permanent loan modification documents required a signature by her deceased spouse, Plaintiff informed BANA of his death and provided it with documentation that she was the personal representative of his estate. (Cmpl. ¶ 34) BANA changed the name on the mortgage

account to "Estate of John Rogers" and refused to honor the HAMP loam modification because Ms. Rogers was not a party due to the original mortgage note. (Cmpl. ¶ 35) In the summer of 2011, Plaintiff applied and was selected for the U.S. Department of Housing and Urban Development's (HUD's) now defunct Emergency Homeowner's Loan Program which provided up to fifty thousand dollars ($50,000) in assistance to certain homeowners. (Cmpl. ¶¶ 39-40)  On or about September 1, 2011, Plaintiff Rogers was informed her ELPH had been denied because she was not on the mortgage note. (Cmpl. ¶41) Two subsequent applications for a loan modification by Plaintiff were rejected for the same reason. (Cmpl. ¶¶ 43,47)  On or about October 28th, 2011, a purported second assignment of mortgage from MERS to the Mortgage Trust was recorded in the office Hennepin County Recorder office as document no. A9709956. (Cmpl. ¶¶ 34) Inexplicably, the interest conveyed by the first and second Assignments is the same. (Cmpl. ¶ 44)  On January 11th, 2012, the Co-Trustees recorded a Power of Attorney to foreclose and Pendency of Proceeding in the office of the Hennepin County

Recorder as document no. A9152525. (Cmpl. ¶ 46) On May 17th, 2013, the Co-Trustees conducted a Sheriff's sale. (Cmpl. ¶ 49)

### III. ARGUMENT

### A. STANDARD OF REVIEW

A motion to dismiss, Fed. R. Civ. Proc. 12(b) (6), tests the legal sufficiency of the claims asserted in the complaint. The issue raised by a Rule 12(b) (6) motion is whether the facts pleaded would, if established, support a valid claim for relief. *Neitzke v. Williams* (1989) 490 US 319, 328-329, 109 S. Ct. 1827, 1833. In ruling on Rule 12(b) (6) motion, a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004).

The standard for dismissal incorporates and must be viewed in light of the simplified pleading standards embodied in the Federal Rules of Civil Procedure. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002). According to Rule 8(a)(2), a complaint must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint is sufficient if it gives the Defendants "fair notice of what

the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* (2007) US, 127 S. Ct. 1955, 1959 (citing *Conley v. Gibson* (1957) 355 US 41, 47–48, 78 S. Ct. 99, 103). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Aschcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 l.Ed2d 868 (2009).

In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Ordinarily, if the parties present, and considers matter outside of the pleadings, a 12(b) (6) motion must be treated as a motion for summary judgment. Fed. R. Civ. 12(d). However, a court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, exhibits attached to the complaint, and materials that are necessarily embraced by the pleadings, without converting the motion into one for summary judgment. *Porous Media Corp v. Pall Corp, 186 F. 3d 1077, 1079 (8th Cir. 1999).*

**B. PLAINTIFF POSSESSES STANDING TO CHALLENGE THE**

## ASSIGNMENTS OF MORTGAGE AS A MATTER OF LAW

Defendants' argument that Plaintiff lack standing to challenge the assignments of mortgage to the Mortgage Trust because she is not party to the Mortgage Trust is the citation of three cases. *Sneh v. Bank of New York Mellon*, 2012 WL 5519 at *5 (D. Minn. 2012), *Novak v. J.P. Morgan Chase N.A.* 2012 WL 3638513 (D. Minn. 2012), *Anderson v. Countrywide*, 2011 WL 1627945 (D. Minn. 2011). In addition, there are two other cases with similar conclusions. *Blaylock v. Wells Fargo Bank, NA*, 2012 WL 2529197 (D. Minn. 2012), *Greene v. Home Loan Services*, Inc, 2010 WL 3749243 (D. Minn. 2010). The *Greene* appears to the first case in this district to reach this conclusion and stated as follows:

> As a final matter, the Court finds that Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Servicing Agreement. Even assuming this matter was adequately pleaded, which it was not, Plaintiffs are not a party to the Pooling and Servicing Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.

*See* Greene 2010 WL 3749243 at *4. It is not clear whether the *Greene* court's two sentence conclusion was of fact or law, and no legal authority whatsoever was cited for this conclusion. However,

9

*Greene* has been cited by subsequent classes as authority for the proposition that plaintiff lack standing without further explanation or citation of authority. *See Anderson* 2011 WL 1627945 at *4, *Blaylock* 2012 WL 2529197 at *4 (citing *Greene*). Similarly, the remaining cases in effect cite *Greene* by proxy without further analysis. See Sneh, 2012 WL 5519 at *3 (citing *Anderson*) and Novak 2012 WL 3638513 at *6 (citing *Blaylock*). The matter is further complicated by the fact that Blaylock and Novak are two of a larger group of cases unfortunately brought by a local attorney under the thoroughly discredited "show me the note" theory, and Anderson was pled by a *pro se* litgant *See e.g. Dunbar v. Wells Fargo*, N.A., 709 F.3d 1254 (8th Cir. 2013). Given the paucity of analysis in Greene and the fact that the other cited cases are dismissals, the most that can be inferred from the shallow line of authority cited by Defendant is that these cases suffered from procedural rather than substantive defects. As a threshold matter, none of the courts in the respective cases actually analysed whether the plaintiffs had standing. For Plaintiff Rogers to have standing to sue, she must be able to show she suffered an injury, that defendant's conduct caused that injury, and that her injury would

be redressed by a decision in her favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42, 43 (1976) *Warth v. Seldin,* 422 U.S. 490, 508 (1975), *Sierra Club v. Morton* 405 U.S. 727, 740-41 405 U.S. 727, 740-41 (1972). Plaintiff suffered the loss of the record title interest in her home. The Defendants breached the PSA of the Mortgage Trust in contravention of New York and Minnesota state law, and acquired record title to Plaintiff's Property via a nonjudicial legal remedy to which they were not entitled. Lastly, Plaintiff's injury would be redressed if she regained record title to her Property. Upon analysis, it appears Plaintiff Rogers has standing to challenge the assignments of mortgage. In addition, the Mortgage Trust is governed by New York rather than Minnesota law which the Defendant do not dispute. *See* Cmpl at Exhibit C p. 217 (178 internal pagination). However, the Courts in *Sneh, Anderson, Blaylock, Novak,* and *Greene* apparently based their ruling on Minnesota law. More importantly, Irene Roger plead a claim for declaratory judgment based on New York law in her Complaint unlike the Plaintiffs in any of these cases. See Cmpl, Count One.

The New York Estate Powers and Trust Section 7-2-4 states in pertinent part:

> *If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.*

a) N.Y. EPTL §7-2-4. (emphasis added) New York's position that actions of the Trustee in contravention of the trust instrument are void is shared only by Delaware. *See* Delaware Statutes, Title 12, Chapters 35 & 38. Nearly all trusts comprising of REMIC such as the Mortgage Trust in dispute are created under the law of either New York or Delaware to comply with the Internal Revenue REMIC statute that the REMIC trust insulates the beneficiaries from creditors and the trusts are "closed". *See* IRC 860(d). Recently, several jurisdictions have declared that untimely transfers to the trust violated the Pooling and Service Agreement and are therefore void *ab initio*. See *Wells Fargo v. Erobobo,* (2013, NY Slip Op 50675, Kings County) *Glaski v. Bank of America* (California 5th Cir. Ct. Appeals July, 2013). As Defendants have neither disputed that the PSA is governed by New York law or cited any appositive authority, the Plaintiff's claims are plausible and sufficient as pled and should

not be dismissed. Moreover, as all evidence of transfers, assignments, pledges and succession of interest in the note and mortgage in question are in the sole and exclusive possession of the Co-Trustee, its agents or its predecessors in interest. Plaintiff has no access to information with respect to these allegations other than that contained in the public record, and must be granted discovery to prove her claims.

### C. Minnesota Law Requires The Foreclosing Party to Strictly and Literally Comply with the Foreclosure Statute or the Foreclosure Is Void.

Defendants' argument that Plaintiff can not state claims for Defendant's failure to comply with the Minnesota foreclosure statute is derivative and wholly reliant on its argument that Plaintiffs lack standing to challenge the PSA of the Mortgage Trust. As set forth in Part III. B. *supra*, this argument rests on a line of authority which is both shallow and distinguishable from the present matter.

In Minnesota, foreclosure by advertisement consists of a series of sequential, statutory steps each of which must be completed in order within a defined time frame to proceed. Minnesota courts

have long held that if the foreclosing party fails to strictly comply with these statutory requirements, the foreclosure is void. *See Jackson v. Mortgage Elec. Registration System, Inc.*, 770 N.W.2d 487 at 494 (Minn. 2009) *citing Moore v. Carlson,* 128 N.W. 578 (Minn. 1910). In *Moore*, the Minnesota Supreme Court voided a foreclosure because although two assignment of the mortgage had been recorded, these assignments were not indicated on the Notice of Foreclosure. As the *Moore* court stated:

> *Foreclosure by advertisement is purely a statutory creation. One who avails himself of its provisions must show an exact and literal compliance with its terms, otherwise he is bound to proves without authority of law. If what he does failed to comply with the requirements of the statute, it is void....",*

*Moore at 578*

Some ninety-nine years later, the Minnesota Supreme Court in *Jackson* cited *Moore* and stated, "...*the forclosure by advertisement statutes prescribe mandatory requirements which must be met for a party to proceed under the statutes.*" *Jackson*, 770 N.W.2d at 494. (emphasis added).

In April 2013, the Minnesota Supreme Court, in *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53 (Minn. 2013) declared a foreclosure void due to an untimely recording of an otherwise-valid

assignment of a mortgage. *See Ruiz*, 829 N.W.2d 57-59. If anything, *Ruiz* underscored that parties seeking to foreclose by advertisement must strictly comply with its requisites particularly recording timely valid assignments prior to commencing a foreclosure proceeding.. *See* Minn. Stat. 580.02(c). Whether or not the Co-Trustees were actually entitled to the foreclosure remedy simply not can be determined until it is adjudicated whether or not the Trustee of the Mortgage Trust was authorized to accept assignments mortgage after the Mortgage Trust was closed pursuant to the PSA and IRC 860(d). Defendants do not present any evidence that any assignments which do not contravene the Mortgage Trust ever occurred. In addition, Defendants also misstate Jackson as not requiring any assignments of mortgage to be recorded, but fail to explain why not one but two assignments to the Mortgage Trust were recorded. In fact, Jackson expressly states the fact that a mortgage authorized to be recorded under the "MERS" statute does not change the requires of the foreclosure by advertisement statute. *See* Jackson, 770 N.W.2d 487, 494. *See also* Minn. Stat. §507.413 (authorizing recording of mortgage where MERS is a nominee). Ultimately, Defendants actually admit that the first assignment of

mortgage was not stated on the notice of foreclosure, and that the Mortgage Trust did not actually tender any funds at the purported Sheriff's Sale. Consequently, Plaintiff's claims are not only plausible as pled, but Defendants arguably concede her claims for violation of Minn. Stat. §§580.04 and 580.11. Accordingly, these claim should not be dismissed.

### D. Plaintiff's Defamation of Title Claims Are Adequately Pled.

Predictably, Defendants reply on misstatement and non-precedential authority to claim that Plaintiff did not adequately plead her defamation of title claim. Specifically, Defendants claim that Plaintiffs failed to plead that Defendants published a false statement and failed to adequately allege As a preliminary matter, if the assignments of records are void pursuant to New York Trust law, these documents are false because they convey no equitable or title interest whatsoever. Similarly, if the assignment of record are void, the Co-Trustees lacked the legal authority to commence the foreclosure by advertisement. *See* Cmpl ¶¶72-77. In addition, the filing of a statement known to be inoperative is a false statement, that if done maliciously,

16

constitutes slander of title. *Padair v. Hughes*, 615 N.W.2d 276 at 279-280 (Minn. 2000) *citing Kelly v. First State Bank of Rothsay*, 145 Minn. 131, 133 177 N.W. 347 at 347.(1920). In contrast, Defendants reply solely on *Welk v. GMAC Mortgage LLC*, 859 F. Supp. 2d 976 which is not only not precedential, but another case from the pool of tainted seeking to prove the discredited "show me the note" theory. *See Dunbar v. Wells Fargo*, N.A., 709 F.3d 1254 (citing *Welk*) (8th Cir. 2013). As Plaintiff has clearly pled that Defendants are attempting to deprive her of the title and possession of her home. If true, a more malicious act is difficult to imagine. Consequently, Plaintiff's claim for defamation of title are plausible and sufficient as plead and should not be dismissed.

**E. Plaintiff's Claims Pursuant to Minn. Stat. §§ 58.18 and 8.31 Survive If Any of Plaintiff's Other Claims Survive**

In general, Minn. Stat §58.13 set forth certain standards of conduct for residential mortgage originators and servicers. In particular, Minn. Stat. §58.13(8) makes it illegal for any residential mortgage originator or servicer to violate any provision of any state or federal law regulating mortgage loans.

(Amend. Cl ¶77) To be sure, Minn. Stat. § 580 et seq is a state law regulating mortgage loans. A private, statutory cause of action exists for violations of Minn. Stat. § 58.13 and certain other provisions of Minn. Stat §58 *et seq.* Minn. Stat. 58.18 Subd,2 expressly authorizes an action under the private attorney general statute Minn. Stat. 8.31,and states, " a private right of action by borrower under this chapter is in the public interest." The remedies under Minn. Stat. §58.18 are also expressly cumulative. Minn. Stat. § 58.18 Sub. 3. (Am. Comply. §§83). Consequently if Plaintiff's defective foreclosure claim survives, so do the remedies afforded by Minn. Stat. §§58.18 and 8.31.

## I. Conclusion

For the foregoing reasons, Plaintiff's factual allegations support a claim upon which relief can be granted, and Plaintiff requests the Court deny Defendants' motion to dismiss, and retain the case on the Court's docket. If the Court finds that any of the Plaintiffs' claims is not legally sufficient to state a claim, Plaintiffs respectfully request leave to amend.

Dated: December 5th, 2013      Respectfully Submitted By
Keogh Law Office

/s/Michael J Keogh
Michael J. Keogh (#0286515)
P.O. Box 11297
St. Paul, Minnesota 55111
Telephone (612) 644-2861