| | |
|---|---|
| Irene A. Rogers,<br><br>Plaintiff,<br><br>v.<br><br>Bank of America, N.A. as successor by merger to Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing, LP; Bank of New York Mellon formerly known as the Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4; Bank of New York Mellon Trust Company N.A. formerly known as Bank of New York Trust Company N.A. as Co-Trustee for Certificateholders CWABS, Inc., Asset-based Certificates, 2005-4; Mortgage Electronic Registration Systems, Inc.; John and Jane Does 1-10,<br><br>Defendants. | Civil No. 13-1698 (SRN/TNL)<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

# INTRODUCTION

Defendants Bank of America, N.A. as successor by merger to Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing, LP ("BANA"), Bank of New York Mellon formerly known as The Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4 ("BONY")[1], and Mortgage

---

[1] Plaintiff names two separate Bank of New York Mellon entities in her suit. It appears as though she intends to sue the trustee for the securitized mortgage trust CWABS 2005-04. As such, this memorandum treats both named Bank of New York Mellon entities as

Electronic Registration Systems ("MERS") (collectively, "Defendants") submit this reply in further support of their motion to dismiss Irene Rogers' ("Plaintiff") lawsuit.

In her opposition to Defendants' motion, Plaintiff makes a series of meritless arguments in an attempt to prevent dismissal of her action. All of Plaintiff's claims are based on her challenge to the pooling and servicing agreement ("PSA"). As she does not have standing to challenge the agreement as a non-party to the PSA, Plaintiff fails to distinguish her claims from those repeatedly addressed and rejected by courts in this district. Thus, Defendants' motion to dismiss should be granted as Plaintiff's attempt to invalidate the subject mortgage and to challenge the foreclosure fails to state a claim for which relief can be granted.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO CHALLENGE THE ASSIGNMENTS OF MORTGAGE

In her opposition, Plaintiff contends that she has standing to challenge the assignments of mortgage. Although she acknowledges that the cases cited by Defendants in their opening brief hold that a borrower does not have standing to challenge assignments of mortgage based on alleged violations of a pooling and servicing agreement, she argues that none of the cases cited "actually analyzed whether the plaintiffs had standing" to state a claim based on alleged violations of the securitization documents. (*See* Oppos. Br., pp. 9-10).

---

one – the trustee for the securitized trust CWABS 2005-04. Nonetheless, Defendants' motion seeks to dismiss all claims brought against all named defendants in this action.

Plaintiff's argument seeks to undermine the multitude of courts in this jurisdiction that have analyzed the issue of standing to challenge a pooling and servicing agreement and their holdings that borrowers do not have standing to challenge the pooling and servicing agreement or other securitization documents to which they are not a party. As this Court has found, when a plaintiff alleges that a defendant did not comply with the provisions of a pooling and servicing agreement, the plaintiff has no standing to challenge compliance with the agreement because the plaintiff is not a party or third-party beneficiary of such an agreement. *See Stinson v. U.S. Bank, N.A.,* Civ. No. 12–68, 2012 WL 2529354, at *3 (D. Minn. June 12, 2012), *Report and Recommendation Adopted* by Civ. No. 12-68, 2012 WL 2529411 (D. Minn. July 2, 2012).

Similarly, in *Karnatcheva v. JPMorgan Chase Bank, N.A.,* 871 F. Supp. 2d 834, 842 (D. Minn. 2012), *aff'd,* 704 F.3d 545 (8th Cir. 2013), the district court held that borrowers do not have standing to assert any breaches of pooling and servicing agreements, as borrowers are not parties or third-party beneficiaries to such agreements. And in *Blaylock v. Wells Fargo Bank, N.A.*, Civ. No. 12-693, 2012 WL 2529197, at *5 (D. Minn. June 29, 2012), *aff'd,* 502 Fed. Appx. 623 (8th Cir Apr. 19, 2013), the district court reviewed the law of this district and held that because a borrower is not a party to a trust agreement, he or she lacks standing to challenge said agreement. *See also Simmer v. HSBC Bank USA, N.A.*, Civ. No. 13-1549, 2013 WL 6244710, *4 (D. Minn. Dec. 3, 2013) ("Plaintiffs' arguments that the pooling and servicing agreement fail because Plaintiffs are not parties to those agreements and lacks standing to challenge Defendants' compliance with the [pooling and servicing agreements]."). Plaintiff is essentially asking

this Court to ignore well established precedent in this District because she is not satisfied with the state of the law. Such unsupported contentions cannot prevent the dismissal of her claims.

Plaintiff further contends that her claim for declaratory judgment was based on New York, not Minnesota, law because the trust is governed by New York law and that all of the cases cited apply Minnesota law in reaching the conclusion that borrowers lack standing to challenge pooling and servicing agreements to which they are not a party. (*See* Oppos. Br., p. 11). Even if New York law governs the pooling and servicing agreement as to the rights and obligations of the parties thereto, the law governing the PSA is irrelevant as Plaintiff is not a party to the PSA and has no standing to state a claim based on alleged non-compliance with the agreement.

Plaintiff's argument that somehow an assignment of mortgage to a trust that occurred after its "closing date" is void based on a view of New York trust law (Oppos. Br., pp. 11-12) has been well analyzed and rejected by numerous courts. Plaintiff attempts to support her theory of a challenge to the foreclosure based on an alleged violation of the timely transfer requirement of the pooling and servicing agreement with citation to an unreported disposition in a New York trial court case, *Wells Fargo Bank, N.A. v. Erobobo,* No. 31648/2009, 2013 WL 1831799 (N.Y. Sup. 2013). The holding of *Erobobo*, however, has not been adopted by any federal courts in this circuit and has been rejected in a multitude of other federal court cases. For example, the district court in *Koufos v. U.S. Bank,* 939 F. Supp. 2d 40, 48-49 (D. Mass. 2013), analyzed and rejected the *Erobobo* holding and held that assignments made to a trust after its closing date do

not violate New York trust law. More recently, in *Cades v. Bank of New York Mellon*, Civ. No. 13-12116, 2013 WL 6212592, at *4 n.7 (D. Mass. Nov. 29, 2013), the district court held that no standing existed for the borrower's assertion that assignments of mortgage violated the pooling and servicing agreement, explicitly rejecting the *Erobobo* holding. *See also Halacy v. Wells Fargo Bank, N.A.*, No. 12-11447, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (noting criticism of *Erobobo* and stating that multiple federal courts have held that under New York law, an assignment of a mortgage into a trust, even in violation of the terms of the PSA, is merely voidable and not void); *Orellana v. Deutsche Bank Nat. Trust Co.*, No. 12-11982-NMG, 2013 WL 5348596, at *4 n.13 (D. Mass. Aug. 30, 2013) (dismissing the *Erobobo* argument and finding that a borrower does not have standing to challenge a PSA even if allegations are that the assignment was after the trust's "closing date"); *Jepson v. HSBC Bank USA, Nat. Ass'n*, No. 12-12179-LTS, 2013 WL 639184, at *5 (D. Mass. Feb. 20, 2013) (plaintiff lacked standing to challenge an assignment to a trust that occurred after its "closing date"). The holding in *Erobobo* not only has no precedential value in this Court, it has also been given no credence by other federal district courts.

Additionally, consistent with the rejection of *Erobobo*, other courts across the country have rejected the exact theory Plaintiff presents here. *See Bank of America N.A. v. Bassman FBT, LLC*, 2012 IL App (2d) 110729, 981 N.E.2d 1, (Ill. App. Ct. 2012) (analyzing New York Trust law and finding that a transfer that may not comply with a pooling and servicing agreement is voidable, not void); *Calderon v. Bank of America, N.A.*, – F.Supp. 2d. --, No. 12-cv-121-DAE, 2013 WL 1741951, at *11-12 (W.D. Tex.

Apr. 13, 2013) ("under New York law, a trustee's unauthorized transactions may be ratified; such transactions are, accordingly, voidable—not void"); *Dernier v. Mortgage Network, Inc.*, – A.3d --, No. 2012-226, 2013 WL 5663279, at ¶ ¶ 33, 34 (Vt. Oct. 18, 2013) (highlighting that New York courts find that actions of a trustee in contravention of the trust are voidable rather than void under New York trust law, and holding that "plaintiffs do not have standing to challenge the assignments of the note and mortgage based on perceived violations of the PSA in its assignment to the trust"); *Martin v. Wells Fargo Bank, N.A.,* Civ. No. 12-3695, 2013 WL 3809676, *3 (N.D. Tex. July 23, 2013) (finding that an assignment of mortgage allegedly made after a trust closing date is voidable, not void, and thus the borrower lacked standing to challenge said assignment).

New York courts analyzing New York law have also concluded there is no standing to make a challenge to a pooling and servicing agreement. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, No. 10 Civ. 531, 2013 WL 1285160, at *3 (S.D. N.Y. Mar. 28, 2013) (dismissing a borrower's claim based on an allegation that the assignment to mortgage occurred after the trust closing date for lack of standing); *Cimmering v. Merrill Lynch Mortg. Investors, Inc.*, No. 8727/2011, 2012 WL 2332358, at *11 (N.Y. Sup.Ct. June 13, 2012) ("Moreover, plaintiffs lack standing to allege a claim for breach of the PSA because they are not parties to this contract, nor do they allege that they are third-party beneficiaries to the agreement"); *Karamath v. U.S. Bank, N.A*., No. 11 CV 1557(NGG)(RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) ("plaintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary

of either, and therefore has no standing to challenge the validity of that agreement or the assignment").

Plaintiff also cites *Glaski v. Bank of America, National Association*, 2013 WL 4037310 (Cal. App. 5th Dist. 2013) for the proposition that allegedly untimely transfers into a trust violate the pooling and servicing agreement. California federal courts analyzing the *Glaski* decision have universally rejected its holding. *See Zapata v. Wells Fargo Bank, N.A.*, No. 13-04288 WHA, 2013 WL 6491377, at *2 (N.D. Cal. Dec. 10, 2013) (rejecting *Glaski* and stating "[e]very court in this district that has evaluated *Glaski* has found it is unpersuasive and not binding authority"[internal citations omitted]);[2] *In re Sandri*, 501 B.R. 369, 375-77 (Bankr. N.D. Cal. 2013) (*Glaski* was unpersuasive and rejecting debtor claims); *Apostol v. CitiMortgage, Inc.*, No. 13-cv-1983-WHO, 2013 WL 6328256, at *6-7 (N.D. Cal. Nov. 21, 2013) (expressly rejecting *Glaski* and holding that individuals who are not parties to a PSA cannot pursue alleged deficiencies in the PSA/securitization process); *Dahnken v. Wells Fargo Bank, N.A.*, No. 13-2838-PJH, 2013 WL 5979356, at *2 (N.D. Cal. Nov. 8, 2013) (adopting majority position that plaintiffs lack standing to challenge noncompliance with a PSA); *Subramani v. Wells Fargo Bank N.A.,* No. 13-1605, 2013 WL 5913789, at *3 (N.D. Cal. Oct. 31, 2013) (holding that *Glaski* was a minority rule and rejecting it); *Newman v. Bank of New York*

---

[2] The court in *Zapata* went on to state: "Instead courts in this district rely on the majority rule in *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (2013). The *Jenkins* decision held that '[a]s an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [a plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions.' *Id.* at 515." *Zapata*, 2013 WL 6491377, at *2.

*Mellon*, No. 1:12-cv-1629 AWI, 2013 WL 5603316, at *3 n.2 (E.D. Cal. Oct. 11, 2013) ("no courts have yet follow *Glaski* and *Glaski* is in a clear minority on the issue"). The overwhelming weight of authority indisputably demonstrates that both *Erobobo* and *Glaski* were wrongly decided and, thus, should not provide Plaintiff with any support for her cause of action in this case.

Not only does Plaintiff mischaracterize New York trust law relating to pooling and servicing agreements, but her arguments display a fundamental misunderstanding of how a securitized trust in this context acquires a loan. Plaintiff has focused on the assignment of mortgage from MERS to BONY as dispositive of the purported transfer requirements as part of her argument that the pooling and servicing agreement was violated and the assignment is void. The date BONY acquired legal title of the mortgage through the assignment of mortgage is not, however, determinative or probative of when the trust acquired the loan. In other words, the transfer of the promissory note (to which the accompanying mortgage follows) to the trust likely preceded any assignment of mortgage by MERS to BONY.

Even if Plaintiff were somehow to have standing to challenge an assignment of mortgage as violating the terms of the PSA, the Mortgage in this instance was properly assigned from MERS to BONY on June 10, 2008. Defendants have presented a recorded assignment from MERS, nominee of the originating entity, to BONY, the foreclosing entity, which satisfies the recordation requirement of section 580.02 and demonstrates a

complete chain of title.[3] *See* Anderson Aff. Ex. C; *see also Blaylock v. Wells Fargo, N.A.,* Civ. No. 12-693, 2012 WL 2529197, at *5 (D. Minn. June 29, 2012) (holding that the public record, which clearly showed a complete chain of title properly recorded, rebuffed allegations of unrecorded assignments of mortgage), *aff'd*, 502 Fed. Appx. 623 (8th Cir. Apr. 19, 2013). Thus, there is a clear chain to the foreclosing entity and Plaintiff does not have any valid contention that the foreclosure was improper.

## II. PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATION OF MINNESOTA'S FORECLOSURE BY ADVERTISEMENT STATUTES

Plaintiff's statutory claims – whether under Minn. Stat. §§ 58.13, 58.18, 580.02, or 8.31 – are all inextricably based on her challenge to the assignments of mortgage and alleged violations of the pooling and servicing agreement. (*See* Oppos. Br., pp. 13-16, 17-18). Plaintiff's lack of standing to challenge the pooling and servicing agreement has been addressed. (*See* supra argument § I). Because Plaintiff's challenge to the assignment from MERS, the original mortgagee, to BONY, the foreclosing entity, fails as a matter of law, her corresponding statutory claims that depend on that challenge also fail.

Plaintiff cites to *Moore v. Carlson*, 128 N.W. 578 (Minn. 1910) and *Ruiz v. 1st Fidelity*, 829 N.W.2d 53 (Minn. 2013) (*See* Oppos. Br., pp. 14-15), but these cases do not

---

[3] In a factually-similar scenario, the Minnesota Court of Appeals held that a second assignment from the originating entity "had no legal effect, because JP Morgan, having assigned its interest to Chase in 2008, had no interest to assign in 2010," distinguishing the case from *Ruiz* and affirming summary judgment. *Oppong-Agyei v. Chase Home Finance, LLC, et al.*, No. A12-2325, 2013 WL 3368869, at *2 (Minn. App. Ct. Jul. 8, 2013). In the instant case, the second purported assignment has no legal effect, as the first assignment from MERS to BONY satisfied all statutory requirements prior to the commencement of any foreclosure proceedings.

support Plaintiff's arguments. In both *Moore* and *Ruiz,* the issue was whether the mortgagee strictly complied with the foreclosure-by-advertisement statute, not whether the borrower could state a claim based on an alleged violation of the pooling and servicing agreement. *See Ruiz,* 829 N.W.2d at 57-58; *Moore*, 128 N.W. at 578. The Minnesota Supreme Court did not, in either case, address the allegations made by Plaintiff here. Thus, these decisions do not undermine the established overwhelming weight of authority holding that borrowers lack standing to challenge securitization documents and cannot state a claim based on such a challenge. (*See* Opening Br., pp. 5-6). Plaintiff's incorrect characterization of *Moore* and *Ruiz* cannot prevent dismissal of her action.

### III. <u>PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION OF TITLE</u>

In her opposition, Plaintiff contends that she has adequately pled a defamation of title claim based on the allegedly false assignments of mortgage. (*See* Oppos. Br., p. 16). As an initial matter, because Plaintiff's challenge to the assignments of mortgage fails as a matter of law as discussed above, she cannot state a viable claim for slander of title based on the alleged falsity of said assignments of mortgage. Further, Plaintiff has done nothing more than recite the elements of a slander of title claim in conclusory fashion with no support whatsoever that would allow the court to conclude misconduct occurred. To state a slander of title claim, a plaintiff's allegations must "permit the court to infer more than the mere possibility of misconduct." *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1258 (8th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S 662, 679 (2009)); *see*

*also Kraus v. CitiMortgage, Inc.*, 513 Fed. Appx. 624, 625 (8th Cir. June 10, 2013) (per curiam) (same).

Specifically, the element of malice requires "reckless disregard concerning the truth or falsity of a matter despite a high degree of awareness of probable falsity." *Otremba v. CitiMortgage, Inc.,* Civ. No. 13-871, 2013 WL 6388461, *6 (D. Minn. Dec. 6, 2013) quoting *Brickner v. One Land Dev. Co.,* 742 N.W.2d 706, 711–12 (Minn. Ct. App. 2007). Plaintiff has pleaded no facts to support anything even approaching reckless disregard for the truth and, thus, cannot satisfy the elements of slander of title. Instead, Plaintiff has merely restated her allegations relating to the pooling and servicing agreement and assignments and just as her other claims are due to be dimissed, the defamation of title claim should be dismissed as well.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff's opposition did not address Defendants' arguments that Plaintiff fails to state a claim for breach of contract. (*See* Opening Br., pp. 12-13). Accordingly, Plaintiff appears to have abandoned the breach of contract claim and it should be dismissed pursuant to Minn. Stat. § 513.33 and the cases applying it.

## CONCLUSION

For the foregoing reasons, as well as those set forth in their opening brief, Defendants' motion to dismiss should be granted, and the complaint must be dismissed in its entirety with prejudice.

Dated:  December 20, 2013  Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: /s/ Keith S. Anderson
　　Keith S. Anderson (#395047)
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8714
Fax: (205) 488-6714
kanderson@babc.com

**BRIGGS AND MORGAN, P.A.**

Mark G. Schroeder (#171530)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 977-8400
Fax: (612) 977-8650
mschroeder@briggs.com

**Attorneys for Defendants Bank of America, N.A., Bank of New York Mellon, and Mortgage Electronic Registration Systems, Inc.**