UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Irene A. Rogers,<br><br>            Plaintiff,<br><br>v.<br><br>Bank of America, N.A. as successor by merger to Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing, LP; Bank of New York Mellon formerly known as the Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4; Bank of New York Mellon Trust Company N.A. formerly known as Bank of New York Trust Company N.A. as Co-Trustee for Certificateholders CWABS, Inc., Asset-based Certificates, 2005-4; Mortgage Electronic Registration Systems, Inc.; John and Jane Does 1-10,<br><br>            Defendants. | Case No. 13-cv-1698 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Michael J. Keogh, Keogh Law Office, P.O. Box 11297, St. Paul, MN 55111, for Plaintiff.

Keith S. Anderson, Bradley Arant Boult Cummings LLP, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203; and Mark G. Schroeder, Briggs and Morgan, P.A., 2200 IDS Center, Minneapolis, MN 55402, for Defendants Bank of America, N.A., Bank of New York Mellon, and Mortgage Electronic Registration Systems, Inc.

SUSAN RICHARD NELSON, United States District Judge

**I.    INTRODUCTION**

This matter is before the Court on Defendants Bank of America, N.A. as successor by merger to Countrywide Home Loans, Inc. and Countrywide Homes Loans Servicing, LP

("BANA"), Bank of New York Mellon formerly known as The Bank of New York as Trustee for the Certificateholders CWABS, Inc., Asset-backed Certificates, Series 2005-4 ("BONY"), and Mortgage Electronic Registration Systems ("MERS")'s (collectively, "Defendants")[1] Motion to Dismiss [Doc. No. 9] Plaintiff Irene Rogers' Complaint [Doc. No. 1] with prejudice. For the reasons set forth below, the Court grants Defendants' Motion.

## II.     BACKGROUND

In this lawsuit, Plaintiff is challenging the foreclosure of the mortgage on her home. According to the Complaint, in April 2005, Plaintiff's husband refinanced the existing mortgage on their home located at 13443 Red Fox Road, in Rogers, Minnesota ("Mortgage"), in favor of Countrywide Home Loans, Inc. (Compl. [Doc. No. 1] ¶¶ 4, 15 & Ex. B.) MERS was the mortgagee. (Id., Ex. B ¶ C.) Plaintiff's husband, but not Plaintiff, signed the Note. (Id. ¶ 15.) MERS assigned its interest in the Mortgage to BONY on June 10, 2008, and the assignment was subsequently recorded with the Hennepin County Recorder on June 27 ("First Assignment"). (Id. ¶ 25 & Ex. E.) Meanwhile, on June 12, Plaintiff and her husband sent a letter to Countrywide Home Mortgage (a subsidiary of BANA), in which they requested a mortgage modification. (See id. ¶ 24 & Ex. D.) Plaintiff's husband passed away on September 26, 2009. (Id. ¶ 30.)

---

[1] The Court notes that the motion does not expressly state that it is brought on behalf of Defendant Bank of New York Mellon Trust Company. However, because Defendant BONY seeks dismissal, and because BONY and the Bank of New York Mellon Trust Company share counsel, the Court will assume that the motion pertains to Bank of New York Mellon Trust Company, as well.

Plaintiff alleges that, in November 2009, BANA offered a "trial loan modification" contingent on Plaintiff making three timely payments in January, February, and March of 2010. (Id. ¶ 31.) According to Plaintiff, she made the required payments in a timely manner and received documents for a permanent loan modification. (Id. ¶ 33.) When Plaintiff learned that the forms required her husband's signature, she informed BANA of his death and provided documentation showing that she was the personal representative of his estate. (Id. ¶ 34 & Ex. F.) However, BANA refused to honor the loan modification because Plaintiff was not a party to the Note. (Id. ¶ 35.) Plaintiff "continued to make partial and late payments," (id. ¶¶ 36, 38), and attempted to obtain assistance from the U.S. Department of Housing and Urban Development, (id. ¶¶ 39–42). But, according to the Complaint, Plaintiff's application was denied because she was not a party to the Note. (See id. ¶¶ 42–43.)

On October 28, 2011, another assignment of the Mortgage was recorded. (Id. ¶ 44 & Ex. G.) This assignment was executed on October 17, 2011, and again assigned the Mortgage from MERS to BONY ("Second Assignment"). (Id. ¶ 44 & Ex. G.) On January 11, 2012, a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage by Corporation ("Notice of Pendency") was recorded. (Id. ¶ 46 & Ex. H.) And, on May 17, 2013, the property was purchased by BONY at a sheriff's sale. (See id. ¶ 39 & Ex. I.) BONY, which is the trustee of a securitized mortgage trust, (see id. ¶¶ 6–7), was a party to a Pooling and Servicing Agreement ("Pooling Agreement") entered into between various entities, not including Plaintiff, (see id. ¶ 16 & Ex. C). According to Plaintiff, the

Pooling Agreement "required that all mortgages to be included in the corpus of the Mortgage Trust were to be transferred into the Mortgage Trust between June 1, 2005 and August 8, 2005. ('the Funding Period')." (Id. ¶ 17.)

Plaintiff's Complaint raises six causes of action. In Count I, Plaintiff seeks a declaratory judgment that the assignments, and therefore the resulting foreclosure, are void for failure to comply with the Pooling Agreement. (See id. ¶¶ 47–52.) In Count II, Plaintiff seeks a declaratory judgment that the foreclosure is void for failure to comply with the statutory foreclosure requirements. (See id. ¶¶ 57–52.)[2] Count III asserts a breach of contract claim based on BANA's failure to execute a final loan modification agreement. (See id. ¶¶ 67–71.) In Count IV, Plaintiff asserts a defamation of title claim. (See id. ¶¶ 73–78.) Count V alleges that BANA violated Minnesota law by failing to record a legal assignment of the Note prior to commencing the foreclosure by advertisement proceedings and by failing to include the Second Assignment in the Notice of Mortgage Foreclosure Sale. (See id. ¶¶ 83–86.) Finally, in Count VI, Plaintiff seeks relief under Minn. Stat. § 8.31. (See id. ¶¶ 89–90.)

Defendants filed a motion to dismiss Plaintiff's Complaint on November 14, 2013 [Doc. No. 9], along with a supporting memorandum [Doc. No. 11] and affidavit with several exhibits [Doc. No. 12]. Plaintiff filed an opposition memorandum on December 6 [Doc. No. 15], and Defendants filed a reply brief on December 20 [Doc. No. 16]. The

---

[2] There are many duplicate paragraph numbers throughout Plaintiff's Complaint. For example, after paragraph 58, the numbering of the paragraphs begins again at 50.

4

matter was heard on April 10, 2014, at which time Plaintiff was granted leave to submit supplemental briefing. Plaintiff did so on April 18 [Doc. Nos. 19–20].

### III. DISCUSSION

#### A. Standard of Review

Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, see Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).[3]

---

[3] Several exhibits have been submitted by the parties. Attached to the Complaint are the following: a Warranty Deed (Exhibit A), the Mortgage (Exhibit B), the Pooling Agreement (Exhibit C), a letter from Plaintiff to Countrywide Mortgage (Exhibit D), the First Assignment (Exhibit E), Letters Testamentary (Exhibit F), the Second Assignment (Exhibit G), the Notice of Pendency (Exhibit H), and the Sheriff's Certificate of Sale (Exhibit I). Attached to the Affidavit of Keith S. Anderson submitted in support of Defendants' motion are the following documents: the Note (Exhibit A), the Mortgage (Exhibit B), the First Assignment (Exhibit C), the Notice of Pendency (Exhibit D), and

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

### B. The Claims

#### 1. Declaratory Judgment—Defective Assignments

Count I of Plaintiff's Complaint fails because Plaintiff lacks standing to challenge the validity of the assignments of the Mortgage under the Pooling Agreement. Plaintiff argues that, because the Mortgage was assigned to BONY outside of the Funding Period mandated by the Pooling Agreement, the assignments and subsequent foreclosure are void. (See Compl. ¶¶ 47–52.) However, numerous courts within this District—including this Court—have held that a plaintiff mortgagor is not a party to, or beneficiary of, the agreement that governs the trust to which the mortgagor's debt instrument has been transferred and, therefore, does not have standing to challenge that agreement. See, e.g., Nelson v. Bank of N.Y. Mellon, Civ. No. 12-1096 (SRN/SER), 2012 WL 4511165, at *3

---

the Sheriff's Certificate of Sale (Exhibit E). The Court may properly consider these documents because they are necessarily embraced by the pleadings and/or are public

(D. Minn. Oct. 1, 2012) ("Moreover, Plaintiffs were not parties to the pooling and servicing agreements by which their notes were pooled into mortgage-backed securities. They therefore do not have standing to challenge those agreements.") (citation omitted); Anderson v. Countrywide Home Loans, Civ. No. 10-2685 (MJD/JJG), 2011 WL 1627945, at *4 (D. Minn. Apr. 8, 2011) ("Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA."), Report and Recommendation adopted by 2011 WL 1630113, at *1 (D. Minn. Apr. 28, 2011); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Even assuming this matter was adequately pleaded, which it was not, Plaintiffs are not a party to the Pooling and Servicing Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."). And, when the Eighth Circuit Court of Appeals was presented with this issue in Karnatcheva v. JP Morgan Chase Bank, N.A., it agreed:

> The plaintiffs base [their] request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.

704 F.3d 545, 547 (8th Cir. 2013) (internal citations omitted), cert. denied, 134 S. Ct. 72 (2013).

---

records.

Plaintiff makes two main arguments in support of her claim. First, Plaintiff asserts that the cases discussed above lack sufficient analysis of the "standing" issue and were wrongly decided under U.S. Supreme Court precedent regarding standing. (See Pl.'s Mem. in Opp. to Mot. to Dismiss [Doc. No. 15] ("Pl.'s Opp.") at 9–11; Pl.'s Supplemental Mem. in Opp. to Mot. to Dismiss [Doc. No. 19] ("Pl.'s Supp. Mem.") at 2–3.) However, Eighth Circuit precedent is binding authority in this District, and Karnatcheva is directly on point. Therefore, this Court is bound to apply the rule set forth therein.

Second, Plaintiff asserts that the trust in this case is governed by New York law, under which untimely transfers to a trust are void, and that the cases finding otherwise are inapposite because they applied Minnesota law. (See Pl.'s Opp. at 11–12.) This argument, too, is unavailing. As noted by Defendants, "[e]ven if New York law governs the pooling and servicing agreement as to the rights and obligations of the parties thereto, the law governing the PSA is irrelevant as Plaintiff is not a party to the PSA and has no standing to state a claim based on alleged non-compliance with the agreement." (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss [Doc. No. 16] ("Defs.' Reply") at 4.)

Moreover, the application of New York law does not change the outcome as to Plaintiff's lack of standing. Plaintiff cites to two opinions—a New York state district court opinion in Wells Fargo Bank, N.A. v. Erobobo and a California state court of appeals opinion in Glaski v. Bank of America, N.A.—for the proposition that untimely transfers to the trust violated the Pooling Agreement and are void. (See Pl.'s Opp. at 12.) It is true that the courts in those cases held that transfers made to a trust after the trust's closing date are

8

void under New York law and that the courts allowed a borrower to challenge the assignment. See Glaski v. Bank of America, N.A., 160 Cal. Rptr. 3d 449, 463–64 (Cal. Ct. App. 2013); Wells Fargo Bank, N.A. v. Erobobo, No. 31648/2009, 2013 WL 1831799, at *8 (N.Y. Sup. Ct. Apr. 29, 2013). However, the holdings in those cases are contrary to the holdings of other New York courts, which have held that a borrower does not have standing to allege a breach of a pooling and servicing agreement to which it is not a party—including a challenge to the validity of an assignment made thereunder. See Karamath v. U.S. Bank, N.A., No. 11 CV 1557(NGG)(RML), 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012) ("[P]laintiff is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment."), Report and Recommendation adopted by 2012 WL 4327502 (E.D.N.Y. Sept. 20, 2012); Cimerring v. Merrill Lynch Mortg. Investors, No. 8727/2011, 2012 WL 2332358, at *9 (N.Y. Sup. Ct. June 13, 2012) ("[P]laintiffs lack standing to allege a claim for breach of the PSA because they are not parties to this contract, nor do they allege that they are third-party beneficiaries to the agreement . . . ."). And, as noted by another court in this District, "the majority of courts that have examined Erobobo have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries." Wolff v. Bank of N.Y. Mellon, LLC, ___ F. Supp. 2d ___, 2014 WL 641510, at *9 (D. Minn. Feb. 19, 2014) (collecting cases). Glaski also has been rejected. See, e.g., Apostol v. CitiMortgage, Inc., Case No. 13-cv-01983-WHO, 2013 WL

6140528, at *7 (N.D. Cal. Nov. 21, 2013) ("[C]ourts in this District have expressly rejected Glaski and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process."). Thus, Plaintiff's arguments in favor of standing are unavailing. For these reasons, the Court finds that Count I fails to state a claim upon which relief can be granted.

### 2. Declaratory Judgment—Defective Foreclosure

Count II fails because Plaintiff has not stated a claim for a defective foreclosure. Plaintiff seeks relief under Minn. Stat. §§ 580.02, 580.04, and 580.11, but her allegations fail under each statutory provision.

#### a. Minn. Stat. § 580.02

In order for a party to be entitled to foreclose on a property, Minn. Stat. § 580.02 requires "that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded." Minn. Stat. § 580.02(3). Plaintiff's allegations in support of a breach of this statutory provision are:

> At the time of the commencement of the foreclosure proceeding on January 11th, 2012[,] no valid and legal assignment of Plaintiffs' [sic] mortgage obligation was recorded on the title records to the subject Property. See Count One supra.

(Compl. ¶ 46.) Therefore, Plaintiff's claim is based solely on the alleged invalidity of the assignments as set forth in Count I—i.e., that because the Mortgage was assigned to BONY outside of the Funding Period mandated by the Pooling Agreement, the assignments were void. As discussed above, Plaintiff lacks standing to challenge the validity of the assignments to the extent that the claim is based on an alleged violation of the Pooling

Agreement. Because Plaintiff cannot state a claim that the assignments are void, she also cannot state a claim for defective foreclosure under Minn. Stat. § 580.02 based on the alleged invalidity of those assignments.

### b.      Minn. Stat. § 580.04

Under Minn. Stat. § 580.04, each notice of foreclosure must include "the name of . . . each assignee of the mortgage, if any." Minn. Stat. § 580.04(a)(1). In Count II, Plaintiff alleges that the Notice of Foreclosure Sale violated this provision because the Second Assignment was not included. (Compl. ¶ 58.) Defendants argue that, as a "subsequent recorded assignment," the Second Assignment is "irrelevant and has no effect on the validity of the subject foreclosure proceedings." (Defs.' Mem. at 7.) According to Defendants, the Mortgage was properly transferred from MERS to BONY by virtue of the First Assignment, so there was no interest to transfer in the Second Assignment and that assignment had no effect on the legal title. (Id.)

Plaintiff cites to several cases for the proposition that the foreclosure by advertisement statutes are to be strictly construed. (See Pl.'s Opp. at 13–15.) However, the holdings and reasoning in those cases actually support Defendants' argument that the statutes only require notice of assignments affecting legal title. For example, in Jackson v. Mortgage Electronic Registration Systems, Inc., the Minnesota Supreme Court held that "the specific language of sections 580.02 and 580.04 does not require that a promissory note assignment be recorded before foreclosing a mortgage by advertisement." 770 N.W.2d 487, 496 (Minn. 2009). The court determined that its holding was "consistent with [its]

longstanding principles of real property law which establish that . . . only assignments of legal title of the security instrument must be recorded in order to commence a foreclosure by advertisement." Id. at 501.  And, in Moore v. Carlson, two assignments—one from the mortgagee to a third party and another from the third party back to the original mortgagee—were recorded but not referred to in the notice of foreclosure sale.  128 N.W. 578, 578 (Minn. 1910).  The Minnesota Supreme Court determined that the statutory provision requiring that the notice specify the name of "the assignee" had been violated.  Id. at 579.  The court explained:

> To name the various assignees is not without value to the mortgagor.  He is entitled to know the history of the transaction, and to consider in connection with his action the various assignments which affect the title of the person seeking to foreclose by advertisement.

Id. (emphasis added).

The Minnesota Court of Appeals addressed an issue similar to the present dispute in Oppong-Agyei v. Chase Home Finance, LLC.  In that case, JP Morgan assigned a mortgage to Chase in 2008.  No. A12-2325, 2013 WL 3368869, at *2 (Minn. Ct. App. July 8, 2013).  In November 2010, Chase purchased the property at a foreclosure sale, and JP Morgan purported to again assign its interest in the mortgage, this time to MERS.  Id.  The court determined that the second assignment "had no legal effect, because JP Morgan, having assigned its interest to Chase in 2008, had no interest to assign in 2010."  Id.  In reaching its conclusion, the court relied on the Minnesota Supreme Court's decision in Sander v. Stenger for the proposition that, when an assignor has no interest to assign, "'neither [the assignment's] existence of record, nor the fact that the notice referred to it, in any way

12

affected the right to foreclose the mortgage under the power of sale.'" Id. (quoting Sander v. Stenger, 136 N.W. 4, 5 (Minn. 1912)).

While it is true that the foreclosure by advertisement statutes are strictly construed, the Court notes that Minn. Stat. § 580.04 requires only that the name of "each assignee" be included on the notice, not a list of each "assignment." Thus, the Notice of Foreclosure complied with the plain language of the statute because the assignee in both the First and Second Assignment was BONY, and BONY is listed as the assignee on the Notice of Foreclosure. (See Compl., Ex. I.) Moreover, even if the statute required a listing of each "assignment," the Notice of Foreclosure is not void for failure to include the Second Assignment because the Second Assignment had no legal effect. After MERS assigned its interest in the Mortgage to BONY in June 2008, it no longer had any interest to assign and so could not transfer legal title of the security instrument in October 2011. Accordingly, the absence of the Second Assignment from the Notice of Foreclosure did not affect the right to foreclose by advertisement, and Plaintiff's claim under Minn. Stat. § 580.04 fails.

### c. Minn. Stat. § 580.11

Pursuant to Minn. Stat. § 580.11, "[t]he mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises" at a foreclosure-by-advertisement sale. Minn. Stat. § 580.11. In Count II, Plaintiff alleges that "mortgagees and assignees are permitted to 'credit bid' at Sheriff's sales based on their ownership of the mortgage debt being foreclosed." (Compl. ¶ 48.) However, Plaintiff contends, BONY's May 17, 2013, credit bid on the property was improper because the First

13

and Second Assignments were not valid and did not transfer the Mortgage to BONY. (See id. ¶¶ 49–50.) Therefore, Plaintiff asserts that the sheriff's sale is void for lack of consideration. (Id. ¶ 51.)

Here, again, Plaintiff's claim is based solely on the alleged invalidity of the assignments as set forth in Count I—i.e., that because the Mortgage was assigned to BONY outside of the Funding Period mandated by the Pooling Agreement, the assignments were void. As discussed above, Plaintiff lacks standing to challenge the validity of the assignments to the extent that the claim is based on an alleged violation of the Pooling Agreement. Because Plaintiff cannot state a claim that the assignments are void, she also cannot state a claim for violation of Minn. Stat. § 580.11 based on the alleged invalidity of those assignments. For all of the reason discussed above, Plaintiff's Count II fails.

### 3. Breach of Contract

Similarly, Count III fails because Plaintiff's allegations regarding BANA's purported failure to honor a loan modification agreement do not state a claim for breach of contract. (See Compl. ¶¶ 67–71.) Pursuant to Minn. Stat. § 513.33, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. A "credit agreement" is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Id., subd. 1(1). Thus, an "agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising

remedies under prior credit agreements, or extending installments due under prior credit agreements," must be in writing in order to give rise to a claim. Id., subd. 3(3). Accordingly, allegations of an oral loan modification agreement, or an unexecuted written loan modification agreement, are not sufficient to form the basis of a breach of contract claim. See Myrlie v. Countrywide Bank, 775 F. Supp. 2d 1100, 1109 (D. Minn. 2011) (finding that an action based on a loan modification agreement is barred by Minn. Stat. § 513.33 unless the agreement is in writing, expresses consideration, sets forth terms and conditions, and is signed); Armstrong v. Ocwen Loan Serv., LLC, Civ. No. 12-146 (DWF/LIB), 2012 WL 4009448, at *3 (D. Minn. Sept. 12, 2012) (dismissing the plaintiff's breach of contract claim based on an alleged loan modification agreement because "the proposed agreement was never executed" and "the alleged oral communication . . . was never reduced to a signed written agreement"); Grueling v. Wells Fargo Home Mortg., Inc., 690 N.W.2d 757, 761–62 (Minn. Ct. App. 2005) (stating that "claims on agreements falling under section 513.33 fail as a matter of law if the agreement is not in writing") (citation omitted).

     Plaintiff alleges that BANA offered her a loan modification provided that she made three trial payments. According to Plaintiff, she made the payments and received documentation for a final loan modification, but BANA refused to sign the final agreement. Thus, according to Plaintiff's own allegations, no enforceable contract was ever formed because the requirements of Minn. Stat. § 513.33 were not met—the alleged agreement was never executed. Plaintiff's only arguments in response appear to be that modifications of

existing loans are subject to different requirements than the formation of new credit agreements, and that "the statute of frauds is not always an absolute defense." (Pl.'s Supp. Mem. at 5.) As to the former argument, the definition of "credit agreement" plainly contemplates loan modification agreements. See Myrlie, 775 F. Supp. 2d at 1109 (stating that "a loan modification agreement would constitute a credit agreement" under Minn. Stat. § 513.33); Armstrong, 2012 WL 4009448, at *3 (stating that, "under Minnesota law, a loan modification constitutes a credit agreement"). As to the latter argument, Plaintiff does not explain why the statute of frauds would not apply in this case. Therefore, because Plaintiff cannot maintain a claim for breach of a contract that does not exist, Count III fails.

### 4. Slander of Title

Count IV fails because Plaintiff has not pleaded sufficient facts to support a slander of title claim.[4] To prevail on such a claim, a plaintiff must show: "(1) [t]hat there was a false statement concerning the real property owned by the plaintiff; (2) [t]hat the false statement was published to others; (3) [t]hat the false statement was published maliciously; [and] (4) [t]hat the publication . . . caused the plaintiff pecuniary loss in the form of special damages." Paidar v. Hughes, 615 N.W.2d 276, 279–80 (Minn. 2000) (citations omitted). Here, Plaintiff claims that the recording and publishing of the First Assignment, Notice of

---

[4] Plaintiff entitled her cause of action under Count IV "Defamation of Title." In Minnesota, "the elements of defamation require the plaintiff to prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower [her] in the estimation of the community." Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 410 (Minn. 1994) (citation omitted). Plaintiff has not pled these elements. Rather, she has pled the elements of a slander of title claim, as discussed herein. Therefore, the Court will evaluate the viability of Count IV as a slander of title claim.

Pendency, and Sheriff's Certificate constitute slander of title because no valid assignment had been executed. (See Compl. ¶¶ 73–77.) Plaintiff's claim fails because she has not pled facts upon which the Court could infer that Defendants made a "false" or "malicious" statement.

First, Plaintiff argues that, "if the assignments of records are void pursuant to New York Trust law, these documents are false because they convey no equitable or title interest whatsoever . . . and the Co-Trustees lacked the legal authority to commence the foreclosure by advertisement." (Pl.'s Opp. at 16.) Thus, Plaintiff's claim is based on the allegations in Count I—i.e., that the assignments were void because they were not transferred in compliance with the Pooling Agreement. As discussed above, however, the case law overwhelmingly indicates that an untimely assignment of a mortgage into a trust renders an assignment voidable, not void, even under New York law. Moreover, Plaintiff lacks standing to challenge the validity of the assignments because she is not a party to, or beneficiary of, the Pooling Agreement. Because Plaintiff has failed to state a claim that the assignments were void, she likewise fails to state a claim that Defendants published a "false" statement.

Second, a malicious statement is one that is a "'groundless disparagement of the plaintiff's title or property . . . made without probable cause.'" Mine v. Fed. Home Loan Mortg. Corp., No. 13-220 (ADM/JSM), 2013 WL 2443852, at *5 (D. Minn. June 5, 2013) (quoting Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 226 N.W. 191, 192 (Minn. 1929)). Thus, "[t]o plead malice, the [plaintiff] must raise factual allegations sufficient to

create a plausible claim that at least one of the [defendants] acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1258 (8th Cir. 2013) (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)).  Plaintiff has made no such allegations. Rather, Plaintiff makes only an insufficient, conclusory allegation that "[t]he Statements were published maliciously, without legal authority to do so." (Compl. ¶ 77.)  Plaintiff has not raised factual allegations sufficient to create a plausible claim that Defendants acted with reckless disregard for the truth despite a high degree of awareness of probable falsity. Accordingly, Plaintiff's Count IV fails to state a claim upon which relief may be granted.

### 5.     Minn. Stat. §§ 58.13 and 58.18

Plaintiff's claims under Minn. Stat. §§ 58.13 and 58.18 fail because they are based on the insufficient allegations discussed above.  Under Minn. Stat. § 58.13, a "residential mortgage originator or servicer" is prohibited from "violat[ing] any provision of any other applicable state or federal law regulating residential mortgage loans." Minn. Stat. § 58.13, subd. 1(a)(8).  And, Minn. Stat. § 58.18 provides that "[a] borrower injured by a violation of the standards, duties, prohibitions, or requirements of sections 58.13, 58.136, 58.137, 58.16, and 58.161 shall have a private right of action." Id. § 58.18, subd. 1.

Plaintiff claims that she is entitled to relief under these provisions because (1) BANA violated Minn. Stat. § 580.02 by failing to record a legal assignment of the Note prior to commencing foreclosure by advertisement proceedings, and (2) BANA violated Minn. Stat. § 580.04 by failing to include the Second Assignment on the Notice of Foreclosure. (See

Compl. ¶¶ 80–86.) In other words, Plaintiff's claims under Minn. Stat. §§ 58.13 and 58.18 are based on the allegations in Count II. As discussed above, Plaintiff has failed to state a claim based on those allegations. Therefore, Count V fails, as well.

### 6. Minn. Stat. § 8.31

Finally, Plaintiff's attempt to bring a cause of action under Minn. Stat. § 8.31 in Count VI fails. "A borrower injured by a violation of the standards, duties, prohibitions, or requirements of [Minnesota Statutes] sections 58.13, 58.136, 58.137, 58.16, and 58.161 also may bring an action under section 8.31." Minn. Stat. § 58.18, subd. 2. Plaintiff asserted a violation of § 58.13 in Count V. As discussed above, however, Plaintiff failed to state a claim under that statutory provision. Therefore, she may not proceed to bring an action under § 8.31 that is based on a violation of that statutory provision, and Count VI fails.

### C. "John and Jane Doe" Defendants

Plaintiff's Complaint states that "Defendants John and Jane Does 1-10 are involved in the instant case and transaction and are currently unknown to Plaintiffs. Said entities will be joined upon further discovery of their true nature and liability once these facts are known and supported by competent evidence." (Compl. ¶ 9.) According to the Eighth Circuit, "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Plaintiff makes no specific allegations against the unnamed defendants. Therefore, the action is properly dismissed as to Defendants John and Jane Does 1-10.

### D. Request for Leave to Amend

Plaintiff asks the Court to grant her leave to amend her Complaint should any of her claims be determined to be legally insufficient to state a claim. (See Pl.'s Opp. at 18; Pl.'s Supp. Mem. at 6.) While the Court may grant leave to amend the pleadings when justice so requires, Fed. R. Civ. P. 15(a)(2), leave to amend is properly denied when the proposed amendment would be futile, see Zutz v. Nelson, 601 F.3d 842, 852 (8th Cir. 2010). A proposed amendment is futile when "'the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6).'" Id. at 850 (citation omitted). Plaintiff has not described the manner in which she would amend her Complaint. Nevertheless, the Court finds that Plaintiff's claims fail for reasons that cannot be overcome by amendment. Accordingly, Plaintiff's request is denied, and Plaintiff's Complaint is dismissed with prejudice.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss [Doc. No. 9] is **GRANTED**;

2. Plaintiff's Complaint [Doc. No. 1] is **DISMISSED with prejudice**; and

3. Any notice of lis pendens recorded in connection with this lawsuit and the property located at 13443 Red Fox Road, Rogers, Minnesota, is **DISCHARGED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 1, 2014           s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge